FILED

MAR 2 9 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Bobby Ray Williams,<br><br>Defendant.<br>_____ / | No. CR 06-00189 SBA (WDB)<br><br>DETENTION ORDER |

For the reasons set forth below, the court finds that the government has shown, on the basis of clear and convincing evidence, that there is no combination of conditions on which Mr. Williams could be released at this juncture that would reasonably assure the safety of the community. It follows that the court must ORDER MR. WILLIAMS DETAINED.

Mr. Williams has been indicted on three serious felony drug charges. He is alleged to have participated (over a sixth month period that ended just two weeks ago) in a conspiracy to sell large quantities of cocaine, cocaine base, and methamphetamine. He also is charged with distributing cocaine on December 12,

2005, and with distributing 50 grams or more of pure methamphetamine on January 4, 2006.

Under the first and third counts, Mr. Williams could be sentenced to life imprisonment – and because he has a prior felony conviction for drug trafficking he would be facing a mandatory minimum 20 year prison term on each of those two counts if he is convicted. His prison exposure on count two (selling cocaine) is 30 years.

The weight of the evidence against Mr. Williams is substantial. He was the primary target of the five month wiretap that generated much of the evidence on which the indictment is based. He was overheard numerous times in intercepted phone conversations discussing drug deals and weapons. In one such conversation in mid-November of last year he sought to confirm with his wife that she had taken a gun into the house. She assured him that she had – and told him she had put it under a sweater (apparently in a closet). On a separate occasion, later that month, he asked co-defendant Montgomery about the whereabouts of a particular Glock pistol. It also is noteworthy that agents found 200 grams of cocaine during the search of one of the properties that the defendant's wife owns (one of the properties she offered as security for a bond).

It is against this backdrop of very serious pending charges that are supported by weighty evidence that we consider other factors pertinent to the issue of danger to the community. We begin by noting that Mr. Williams, while still in his early thirties, has suffered at least six felony convictions, eight misdemeanor convictions, at least one parole violation and at least one violation of probation. He was on probation when he engaged in the conduct giving rise to the current indictment – and the probation authorities in Contra Costa County have indicated that they intend to initiate revocation proceedings as this case proceeds.

1    Mr. Williams' long criminal record began when he was a juvenile and has
2    continued essentially uninterrupted (except by substantial periods of incarceration)
3    since then. As early as 1988 he was sent to Juvenile Hall as a result of selling cocaine
4    base.  Two years later he was charged again with the same offense – but suffered no
5    conviction because of a diversion.  Since then, he has been charged repeatedly and
6    convicted often of crimes involving drugs, guns, and/or physical violence.  He also
7    has two convictions for evading authorities or obstructing justice. There is no
8    indication from this record that the sanctions the criminal justice system can impose
9    have caused him to change his ways or have deterred him from committing new
10   crimes.
11        This pattern of consistently violating the criminal law gives more significance
12   to other facts that support a deep concern in the court that Mr. Williams does not
13   respect or intend to honor duties under the law or to other persons. His sister reports
14   that he has some 13 children in addition to the two he has had with his current wife
15   and the two he had with an earlier spouse.  Co-defendant Tanya Walton reports that
16   she has been in a romantic relationship with Mr. Williams for the past four years and
17   has a one-year old son whom Mr. Williams fathered – all while Mr. Williams has
18   been married to Ms. Woods and has fathered, through her, an 8 month old baby and
19   a two year old daughter.  Mr. Williams claims to have operated a landscaping
20   business during the past several years – and during the detention hearing he asserted
21   (through counsel) that he has committed income from that business to support of his
22   children.  This assertion, however, is directly contradicted by what he told Pretrial
23   Services – and by what Pretrial Services was told by his wife and Ms. Walton, both
24   of whom said that Mr. Williams does not contribute to the support of any of his
25   children.
26        Mr. Williams also admitted to Pretrial Services that he is currently unemployed
27   and that he has no license to operate a business.  His wife could not confirm that he

28

1  operated a landscaping business in the past – only that he has done "odd jobs off and
2  on." Mr. Williams has filed no income tax returns and has pointed to no other
3  evidence to support his assertion that he has run a legitimate business. Nor has he
4  pointed to any evidence that for the past several years he has had significant income
5  from any lawful source – or that he has made any significant financial contributions
6  to the support of his numerous children. He identifies no significant assets – and has
7  acquired no special skills or training. In sum, he has had little or no gainful
8  employment and has contributed little or nothing to the support of the persons he is
9  responsible, under the law, to support.

10      Where is Mr. Williams' sense of connection, his understanding of what it
11  means to have a duty or an obligation?

12      To rebut the inferences Congress created (based on the nature of the charges)
13  and that the facts described above support, Mr. Williams proffers four sureties, only
14  one of whom, his wife (Ms. Woods), has property to post. Unfortunately, the proffer
15  of support (and property commitments) by Ms. Woods, his wife, is compromised by
16  several considerations. One is the government's proffer that intercepted phone
17  conversations between the defendant and his wife indicate that she has had clear
18  knowledge that the defendant had a gun in the house (she put it there at his request)
19  and that she knew or had substantial reason to believe that defendant was engaged in
20  illegal drug trafficking. Another, less ominous consideration, is the fact that it was
21  in one of the houses that she owns that agents found 200 grams of cocaine and two
22  of the defendants in this case. Ms. Woods also advised Pretrial Services that she
23  knew the defendant had used marijuana in the past. It is not clear that she knew about
24  the defendant's relationship with co-defendant Walton or the one-year old child that
25  the defendant fathered with Ms. Walton – but the latter facts make the court worry
26  that the prospect of causing financial harm to Ms. Woods (by violating terms of
27  pretrial release) would not have a substantial deterrent effect on Mr. Williams.

28

4

1       Given all these considerations, the court cannot identify any conditions of

2   pretrial release (including full-time residence in a half-way house) that would provide

3   the required reasonable assurance that if Mr. Williams were released he would abide

4   by the law and resist the temptation to continue (through intermediaries) to engage

5   in criminal activity.

6

7       The court ORDERS Mr. WILLIAMS DETAINED.

8

9   IT IS SO ORDERED.

10  March 29, 2006.

11

12  WAYNE D. BRAZIL

13  United States Magistrate Judge

14

15  Copies to: All parties, SBA,

16      WDB, Stats, 2 certified copies to the US Marshal

17

18

19

20

21

22

23

24

25

26

27

28